Phillip Babich* (CA SBN 269577)
email: pbabich@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

* *Pro Hac Vice* application pending

Jessica Myers Vosburgh (AL SBN 1710-A00Y)
email: jessica@adelantealabama.org
Adelante Alabama Worker Center
2104 Chapel Hill Rd.
Birmingham, AL 35216
Telephone: (205) 317-1481
Facsimile: (205) 224-9675

Attorneys for Plaintiffs
Freedom for Immigrants and
Etowah Visitation Project

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA, MIDDLE DIVISION

| | |
|---|---|
| FREEDOM FOR IMMIGRANTS; ETOWAH VISITATION PROJECT,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>ETOWAH COUNTY SHERIFF'S OFFICE; AND DOES 1-10<br><br>　　　　　Defendants. | No.:<br><br>**COMPLAINT BY FREEDOM FOR IMMIGRANTS AND ETOWAH VISITATION PROJECT AGAINST THE ETOWAH COUNTY SHERIFF'S OFFICE FOR VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION FOUR OF THE ALABAMA CONSTITUTION**<br><br>**PRELIMINARY INJUNCTION AND INJUNCTIVE RELIEF DEMANDED**<br><br>**42 U.S.C. § 1983** |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 1 –

# INTRODUCTION

1. Since 2013, Freedom for Immigrants ("FFI") and Etowah Visitation Project ("EVP") (collectively "Plaintiffs") have been providing critical assistance to immigration detainees in the Etowah County Detention Center (the "Detention Center") through a visitation program that was made possible by the assistance of the Etowah County Sheriff's Office (the "Sheriff's Office"). During Plaintiffs' visits to the Detention Center, detainees received vital information about obtaining legal services, medical care, and assistance with contacting family members. Without Plaintiffs' assistance, the detainees in Etowah County are unable to receive such information. Plaintiffs' program ran without significant incident for approximately seven years.

2. In November 2019, the Sheriff's Office, which runs the Detention Center, suddenly revoked Plaintiffs' access to the Detention Center and suspended its visitation program. This was in retaliation for a peaceful protest of detention conditions that occurred outside of the Detention Center on November 3, 2019. The Sheriff's Office ostensibly reinstated the program in December 2019. However, because the Sheriff's Office has placed severe limitations on the Plaintiffs' program and refused to abide by the specific visitation agreement that existed between the parties prior to the protest, Plaintiffs consider the program effectively suspended in retaliation for their right to peacefully protest. The Sheriff's Office's retaliation against Plaintiffs violates the First and Fourteenth Amendments to the United States Constitution, and section IV of the Alabama Constitution.

3. From April to June 2020, Plaintiffs attempted to reach a settlement with the Sheriff's Office to fully reinstate its visitation program. Those efforts were futile.

4. Plaintiffs seek to prevent the Sheriff's Office from continuing to effectively bar them from the Detention Center in violation of their free speech rights. Plaintiffs respectfully request that the Court issue a preliminary injunction followed by a permanent injunction to prevent the exclusion of Plaintiffs from the Detention Center and fully restore their visitation program to the state it was in prior to the November 3, 2019 peaceful protest.

5. This action arises under the First and Fourteenth Amendments to the United States Constitution, section four of Alabama Constitution, and the United States Code, title 42, section

1983.

## JURISDICTION AND VENUE

6. Jurisdiction is founded upon 28 U.S.C. § 1331 (federal question); § 2201 (authorizing declaratory relief); and § 2202 (authorizing injunctive relief and any other "necessary and proper" relief).

7. Plaintiffs have exhausted all administrative remedies.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because the Sheriff's Office is in this District.

9. This action is timely.

## PARTIES

10. FFI is a community-based 501(c)(3) non-profit organization based in California. FFI runs and supports visitation programs in immigration detention centers across the United States, including in Etowah County at the Detention Center. It is also organized to disseminate ideas through the permissible, non-violent exercise of the rights of free speech guaranteed to it by the First and Fourteenth Amendments to the United States Constitution, and section four of the Alabama Constitution.

11. EVP is a member group of FFI that is based in Etowah County, Alabama. EVP runs and supports a visitation program at the Detention Center. Through visits and/or letters, EVP connects with immigrants who are being detained at the Detention Center while they await immigration hearings or deportations. EVP is also organized to disseminate ideas through the permissible, non-violent exercise of the rights of free speech guaranteed to it by the First and Fourteenth Amendments to the United States Constitution, and section four of the Alabama Constitution.

12. Defendant Sherriff's Office is, and at all relevant times herein was, a local law enforcement agency for the County of Etowah and is organized and existing under the laws of the State of Alabama. The Sheriff's Office runs the Detention Center, under a contract with U.S. Immigration and Customs Enforcement's New Orleans Field Office ("ICE").

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

13. In 2013, Plaintiffs started a visitation program at the Detention Center, in cooperation with the Sheriff's Office and ICE. The program's purpose is to assist immigration detainees in obtaining legal and other critical services and to monitor detention conditions. Plaintiffs also help gather evidence for detainees' cases, help them enter rehabilitation programs, post bond and find sponsors for their release. Many of these detainees are seeking asylum in the United States. The visitation program exists to provide support to detained immigrants, and, in some instances, even shine a light on serious abuse or harm that detained immigrants are experiencing.

14. Plaintiffs also help ameliorate the extreme isolation experienced within detention. This support is particularly crucial for those detained at the Detention Center, as the facility is located hours away from any major city and is far from most of the detainees' families, communities, and legal counsel. Meeting with Plaintiffs is the first and often only way for immigrant detainees to communicate with the outside world.

15. As the Detention Center operates one of the most restrictive visitation policies for detained immigrants in the country, the Sheriff's Office initially agreed to and provided Plaintiffs with the benefit of a far more streamlined visitation process than the visitation process provided to the general public. Under this streamlined visitation process, an officer with the Compliance Division of the Sherriff's Office would post Plaintiffs' sign-up sheets at the Detention Center for the detainees to easily access. Every three to four weeks, the officer would send the coordinator of EVP, Katherine Weathers, the list of detainees who had signed up to visit with Plaintiffs' volunteers. Ms. Weathers then paired the list of detainees with Plaintiffs' volunteers, and someone from her team communicated the pairings back to the Sheriff's Office who coordinated Plaintiffs' visits with the detainees. With the assistance of the Sheriff's Office to schedule visits, Plaintiffs' volunteers were able to conduct twenty-minute visits with the detainees on Sundays through Wednesdays at the Detention Center via the Detention Center's video visitation system. Plaintiffs used the video visitation system as the Detention Center does not permit in-person visits with the detainees. All visits are done remotely by monitor in a small visitation space of the Detention

Center, which accommodates visits with ICE detainees and county inmates. Plaintiffs' volunteers were each allowed to visit approximately three detainees during each of their visits. Plaintiffs were permitted to bring books and magazines to the detainees. Furthermore, Plaintiffs were usually given approval by Captain O'Bryant and the Sheriff's Office to provide items requested by detainees, including, but not limited to, shoes, clothing, and flash drives. Plaintiffs' arrangement with the Sheriff's Office and ICE operated for seven years without significant incident.

### 2015 Visitation Suspension

16. In July 2015, FFI filed a formal complaint with the Department of Homeland Security's Office of Civil Rights and Civil Liberties on behalf of multiple detained immigrants alleging systematic abuses at the Detention Center. The complaint alleged that ICE staff at the Detention Center engaged in a routine pattern of physical abuse, including, but not limited to, beatings and assaults to coerce detained immigrants into signing removal documents. The complaint also described claims that the Detention Center and ICE staff violated medical and mental health care standards, failed to appropriately respond to an extreme medical emergency, chronically understaffed the facility, failed to meet basic nutritional needs, and impermissibly held people in prolonged, indefinite detention. The filing of the complaint followed an organized Father's Day Protest in front of the Detention Center on June 20, 2015, attended by Plaintiffs' staff and volunteers. Two weeks later, the Sheriff's Office and ICE responded by suspending the Etowah Visitation Program. The Sheriff's Office and ICE eventually relented and reinstated the program, but only after its actions were the subject of protests, critical media coverage, and a demand letter.

### November 3, 2019 Protest at the Detention Center

17. On November 3, 2019, a peaceful protest was conducted in front of the Detention Center. The purpose was to advocate for the closure of the Detention Center as tied to a broader national campaign to end immigration detention. The protest was organized by Detention Watch Network ("DWN") and Shut Down Etowah ("SDE").

18. In the morning of November 3, 2019, two buses carrying approximately 60 persons arrived at the Detention Center. Twenty-nine of them were volunteers associated with FFI and

EVP. They had visits with detainees which were pre-approved and scheduled by the Sheriff's Office. Approximately 30 other individuals continued on but later returned with the two buses around noon to drop off bagged lunches at the Etowah County Courthouse's parking lot and gather for a protest. The courthouse is located across the street from the Detention Center.

19. After the FFI and EVP volunteers finished their visits they joined the other protesters. At around 1:00 p.m., members of SDE and DWN welcomed all of the protesters and spoke to them about why immigration detention is unethical and unacceptable. Another individual from SDE spoke about human rights violations and inhumane conditions at the Detention Center. He also said SDE's goal was to have the detainees released and ultimately see that the Detention Center was permanently closed.

20. From 1:15 p.m. to 2:00 p.m. representatives from other organizations around the country spoke about other detention centers, what they are doing to help immigration detainees, and the need for public officials to shut down all detention centers in the United States.

21. One of the speakers was a former detainee in Etowah County. He recounted the abuses suffered there and also called for the Detention Center to be shut down.

22. The protest was non-violent and peaceful.

23. Protesters held signs that read "End Immigrant Detention Now," "Communities Not Cages," "You Are Not Forgotten," "Shut Down Etowah," "The Constitution Applies to Immigrants Too," "The Sun Shines For Everyone," and "In Solidarity With Our Brothers/Siblings in Northwest Detention Center Who Are On a Hunger Strike."

24. The protesters chanted "Shut it down."

25. The protest took place on the public sidewalks in front of and next to the Detention Center. None of the protesters were on the Detention Center's property during the protest.

26. There were at least 60 people in attendance at the protest, including the 29 FFI and EVP volunteers who had visited with detainees that morning.

**November 2019 Visitation Suspension**

27. On November 5, 2019, fewer than 48 hours after the peaceful protest, Ms. Weathers of EVP received a phone call from Captain Mike O'Bryant of the Sheriff's Office. Captain

O'Bryant informed her EVP's visitation program was suspended until further notice. Captain O'Bryant told Ms. Weathers that the suspension was due to the two large buses that arrived at the Detention Center on November 3 for the protests. He also said that "it had gotten to be too much" and he wanted to "put the brakes on [the visitation program] for a while."

28.     Ms. Weathers followed-up that same day with an email to Captain O'Bryant stating: "Would it be possible to meet with you…. I hope we can resolve this. My personal objective and the objective of the EVP is to support the men in detention through visits, letters and other material support as possible. We strive to work with visitation room and other [Detention Center] staff to make our visits run smoothly with least impact on [Detention Center] staff. We are open to your suggestions on ways to streamline the process. We know our visits are meaningful to the men because they tell us they are. Visits are extremely meaningful to our visitors as well and we hope to be able to continue." Captain O'Bryant responded promptly with an email that simply stated, "Katherine, [a]t this time I will say no [to meeting with you], but maybe we can meet a few weeks down the road."

29.     On November 7, 2019, Ms. Weathers sent a second email to Captain O'Bryant that clearly articulated Plaintiffs' concerns regarding the unlawful suspension of the visitation program and demanded that the visitation program be immediately reinstated in full: "As I mentioned, we were very concerned to learn about the suspension of our visitation program. As you know, we have tried to work closely with you in a spirit of cooperation for many years now. We were surprised that you suspended the visitation program with no warning. We are asking that you restore the visitation program immediately, and set up a time for us to either speak on the phone or meet at your convenience to address any concerns you might have. If the program is not restored promptly, it will disrupt relationships we've formed with men inside who await our visits each week, and will impact our ability to provide Christmas packages for the immigrants detained. [Detention Center] staff play[] a critical role in facilitating our visits by posting sign-up sheets in the units and scheduling visits for us. These efforts by the Sheriff's Office have been vital to the success of EVP efforts and we are appreciative. The larger issue is that visits are meaningful to the men in detention. Visitors are often able to make important connections with family members and

attorneys.  Visits also serve to reduce isolation from the outside world. Immediate impact on visitations is that visits on our calendar for the near future, including November 12, 13, and 17 will not be possible.  Additionally, based on our conversation, we will not be permitted to provide Christmas packages for the immigration detainees due to this suspension.  This restriction only harms the detainees, who I know look forward to receiving these gifts.  Preparation of gifts is time consuming, involves efforts of many people and is costly.  We need plenty of time to make it happen.  Any delay beyond this week will negatively impact our ability to provide gifts to the men by Christmas.  I want to emphasize my hope that we can resolve the issues you raised between ourselves.  As you are well aware, visitation was stopped once before and ultimately reinstated through legal intervention by the Southern Poverty Law Center and Freedom for Immigrants (formerly CIVIC).  Based on what you shared with me, I understand that the current suspension of visitation is based on the number of visitors seeking visits last Sunday as well as a contemporaneous protest, which occurred across the street during the visitation period.  As in 2015, this current suspension raises serious First Amendment violations. I hope we can work out any process issues you may have regarding visitor scheduling without involving our lawyers and the media again.  We would appreciate a response within 72 hours confirming that the suspension has been lifted.  Thank you for the support you have given the Etowah Visitation Project in the past. We look forward to putting this behind us and resuming what I thought was a strong working relationship." Captain O'Bryant never responded to Ms. Weathers' November 7, 2019 email.

30. On December 2, 2019, Plaintiffs sent a letter to the Sheriff's Office and ICE explaining the history of the visitation program and that the Sheriff's Office had violated their constitutional rights to free speech by suspending the program due to the peaceful protest. Plaintiffs sent a second letter to the Sheriff's Office, this one signed by 62 other organizations in support.  It stated how the suspension would harm the detainees.  It also demanded that the Sheriff's Office reinstate the program immediately.

31. In December 2019, 100 men within the Detention Center sent a letter to the Sheriff's Office demanding that the visitation program be reinstated.

**December 2019 "Reinstatement" of the Visitation Program**

32. On December 16, 2019, Captain O'Bryant sent an email to Plaintiffs stating, "[a]fter speaking with the Sheriff he has agreed to allow the Etowah Visitation Project to resume visits with the understanding that the visitation policies and rules are followed at all times. The rules are posted in the visitation area if you have any questions." As explained below, this was *not* a full reinstatement of EVP's visitation program.

33. Full reinstatement of the visitation program requires that the Sheriff's Office abide by the visitation agreement it entered with Plaintiffs. The visitation agreement requires the Sheriff's Office to: (1) post sign-up sheets in the units giving immigration detainees the opportunity to request visits or pen pals. Sign-up sheet included name, alien number, country of origin, date of birth, language preference and unit number; (2) provide sign-up sheets to EVP every 2-4 weeks. These sheets, along with referrals from other individuals or visitation groups in the FFI network, were used to schedule visits; (3) designate point(s) of contact to coordinate and approve visits, provide sign-up sheets, provide approval and guidelines for support of the men on an individual or collective basis; (4) schedule visits as requested and identified by EVP; and (5) notify EVP of changes to processes for visitation or concerns/problems identified.

34. Full reinstatement of the visitation program never occurred. Plaintiffs are now limited to a single twenty-minute visit with one detainee per visit. Limiting visitation privileges to a single twenty-minute visit a day makes a round trip of two hours (from Birmingham) or three hours (from Huntsville) impractical for Plaintiffs' volunteers and essentially prevents the visitation program from operating at the Detention Center. Plaintiffs are severely restricted in bringing essential items to the detainees in the Detention Center, and they are not allowed to mail items to the detainees. Most importantly, Detention Center staff no longer post sign-up sheets in detainee units or assist in scheduling visits for Plaintiffs' volunteers. This is a significant disruption to the program as sign-up sheets give the men in detention the opportunity to request visits or pen pals and inform them of the availability of Plaintiffs' volunteers. Without sign-up sheets the visitation program is no longer functional. Detainees are unaware of Plaintiffs' services, and Plaintiffs are unable to discern what individuals are still in the Detention Center and requesting visits. The

– 9 –

visitation program was operational only with the assistance of the Detention Center staff in scheduling visits. By eliminating this benefit the Sheriff's Office is effectively continuing the suspension of the visitation program. The Sheriff's Office revoked all of these privileges in retaliation for Plaintiffs' exercise of their constitutional rights to peacefully protest outside of the Detention Center.

35. In response to the severe restrictions placed on the visitation program, Plaintiffs reached out to Captain O'Bryant for assistance regarding scheduling visits with the detainees and were advised as follows: "Please see our visitation policy on scheduling visits with detainees, the information is posted in visitation and also available on our [website]. Visitation is open Sunday-Wednesday 8:00 a.m. [to] 5:00 p.m. You are welcome to visit anytime during the scheduled hours with the understanding you follow the policies." The "policies" referenced by Captain O'Bryant require detainees to schedule their own visits with Plaintiffs in direct contradiction with the parties' visitation agreement.

36. Since early November 2019, the Sheriff's Office has ignored and refused to abide by the visitation agreement. Prior to the November 3, 2019 peaceful protest, the Detention Center staff acted as a liaison between the detainees and Plaintiffs, and it was through this partnership that the visitation program functioned. On December 16, 2019, the Sheriff's Office, via Captain O'Bryant's email, deceived Plaintiffs into believing that the visitation program would be reinstated in full in order to prevent additional protests, critical media coverage, and legal intervention. In reality, the visitation program that was created in 2013 has been permanently suspended. Plaintiffs no longer have the special privileges at the Detention Center that were essential for the functionality of the visitation program. The visitation program that existed prior to November 3, 2019 is effectively terminated.

37. Adding insult to injury, the Sheriff's Office banned Plaintiffs from bringing Christmas gifts to the detainees in December 2019, which had been a tradition for six years running. Plaintiffs sent about two-hundred holiday cards instead. Almost all of them were returned as undeliverable, even though at least thirteen detainees were confirmed to still be at the Detention Center. The holiday cards continued to be returned as late as the first week of February.

**Exhaustion of Administrative Remedies**

38. Plaintiffs sent the Sheriff's Office emails on December 16, 2019, January 2, 2020, and January 8, 2020, seeking confirmation and/or clarification that EVP sign-up sheets would be posted in the Detention Center and that Plaintiffs' volunteers could resume a regular visitation program. Captain O'Bryant and the Sheriff's Office responded by directing Plaintiffs' to the Detention Center visitation policies located on its website, and ignored Plaintiffs' request for sign-up sheets.

39. On January 8, 2020, Plaintiffs sent Captain O'Bryant a letter demanding full reinstatement of the visitation program. Captain O'Bryant did not respond; nor did any other representative of the Sheriff's Office. Captain O'Bryant and the Sheriff's Office have essentially ceased all meaningful communications with Plaintiffs.

40. On April 28, 2020, Plaintiffs' counsel sent a demand letter to the Sheriff's Office by certified mail. The Sheriff's Office received the letter on May 4, 2020. Plaintiffs' counsel demanded full reinstatement of EVP's visitation program. They also set forth the reasons why the program's suspension violated Plaintiffs' constitutional rights. Plaintiffs' counsel also advised the Sheriff's Office that if satisfactory resolution was not reached within a relatively short time frame, Plaintiffs would file suit.

41. To date, the Sheriff's Office has not responded to the demand letter.

42. Currently, Plaintiffs have minimum and sporadic contact with detainees inside the Detention Center. Plaintiffs no longer have weekly structured and facilitated contact with detainees and there is no longer a systematic way for large numbers of detainees to reach Plaintiffs. Indeed, attempts by EVP to conduct distance visits with detainees through a system run by the private company Securus and coordinate through the Sheriff's Office have failed. Additionally, Plaintiffs' are banned from providing much needed materials to the detainees, including books, magazines, clothing, and flash drives. Without the visitation program, Plaintiffs have lost the ability to build trust with the immigration detainees they serve.

43. Full reinstatement of the EVP visitation program is necessary to cure the Sheriff's Office's violation of FFI and EVP's constitutional rights. The Sheriff's Office's restrictions on the

program have gutted its core elements and make it impossible for FFI and EVP to fulfill their mission. Without the assistance of the Detention Center staff, Plaintiffs have been unable to visit detainees since November 2019.  Without visitations, Plaintiffs are no longer able to provide support to detained immigrants.  Without visitations Plaintiffs are unable to provide detainees with vital information about obtaining legal services, medical care, or assistance with contracting family members.  Additionally, Plaintiffs are severely restricted in bringing essential items such as shoes, socks, underwear, magazines or books. Visitations are at the heart of the visitation program, and visitations are no longer possible for Plaintiffs as the Detention Center staff refuse to assist Plaintiffs in scheduling visits with detainees.

44. Allowing the Sheriff's Office to continue its suspension of the visitation program will almost certainly have an impact on immigrants detained at Etowah, particularly those who have already developed rapport with visitors and who are accustomed to receiving visits. The men detained in Etowah have regularly identified issues of medical neglect, racism from officers, physical abuse, and a general lack of order or justice within the Detention Center. There are men inside of the Detention Center whose mental health is deteriorating. In the past, visitors have been able to notice their decline and have worked to provide support to them. Indeed, men have spoken to visitors about thoughts and even plans of suicide. Denying them visits withdraws the much needed social support that the visitation program provides.

45. Without an order from this Court, the Sheriff's Office's violation of Plaintiffs free speech rights will go unaddressed and the harm to Plaintiffs and the detainees will go unabated.

**CAUSE OF ACTION**

(U.S. Const., 1st and 14th Amends., Ala. Const., §4, and 42 U.S.C. § 1983)

46. Plaintiffs incorporate and reallege paragraphs 1 through 45 as though set forth herein.

47. The conduct above complained of constitutes unreasonable and unconstitutional interference with and infringement on Plaintiffs' exercise of its rights of free speech guaranteed under the First and Fourteenth Amendments to the United States Constitution and section four of the Alabama Constitution.

48. Free speech is protected under the First and Fourteenth Amendments to the United States Constitution and section four of the Alabama Constitution, which make it unlawful for government officials to retaliate against individuals for speaking about matters of public concern.

49. A government official's retaliation against the exercise of free speech rights is a violation of the United States Code, title 42, section 1983.

50. State action is present here because the Sheriff's Office is a local law enforcement agency of the County of Etowah and took action in terminating Plaintiffs' visitation program at the Detention Center.

51. In speaking about matters of public concern during the November 3, 2019 peaceful protest, Plaintiffs engaged in protected speech under the First and Fourteenth Amendments to the United States Constitution and section four of the Alabama Constitution.

52. The loss of a voluntary position, such as FFI and EVP's relationship with the Sheriff's Office and Detention Center through operation of EVP's visitation program, is considered the loss of a valuable government benefit. *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17 (2d Cir. 1979) (holding that the dismissal of a volunteer firefighter for criticizing low morale and inadequate training and discipline can violate the First Amendment).

53. The loss of a governmental benefit as a consequence of speech violates the First Amendment if it addressed a matter of public concern. *Pickering v. Board of Educ.*, 391 U.S. 563 (1968). EVP's peaceful protests that took place on November 3, 2019, against poor conditions at the Detention Center are, without a doubt, a matter of "public concern" relating to the health, safety, and humane treatment of detainees. It was, and is, the constitutional duty of the Sheriff's Office to protect, not punish, speech that relates to public issues. *See Connick v. Myers*, 461 U.S. 144, 151 (1983) (holding that public employers must protect speech that relate to public issues).

54. By effectively suspending Plaintiffs visitation program, the Sheriff's Office has taken prohibited adverse action against Plaintiffs that would deter members from continuing to engage in that speech.

55. The adverse action by the Sheriff's Office was motivated by Plaintiffs' protected conduct, i.e., Plaintiffs' right to peacefully protest outside the Detention Center.

– 13 –

56. This conduct occurred in execution of the Sheriff's Office's policies and customs promulgated by those whose edicts or acts may fairly be said to represent official policy.

57. The Sheriff's Office has interfered with, disrupted and suppressed Plaintiffs' exercise of their rights guaranteed under the First and Fourteenth Amendments to the United States Constitution and section four of the Alabama Constitution.

58. Plaintiffs have no adequate remedy at law, and unless this Court grants the temporary restraining order as well as the injunctive and declaratory relief herein requested, Plaintiffs will be unable to exercise their rights and will be irreparably damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1. Preliminary and permanent injunctions enjoining and restraining the Sheriff's Office from further interference with Plaintiffs' exercise of their rights to freedom of speech;

2. An order declaring that the Sheriff's Office has violated the First and Fourteenth Amendments to the United States Constitution and section 4 of the Alabama Constitution;

3. Preliminary and permanent injunctions prohibiting the Sheriff's Office from preventing Plaintiffs' from visiting detainees at the Detention Center, and reinstating the visitation program to operate as it had prior to the November 3, 2019 peaceful protests;

4. Attorney fees and costs of suit as permitted by law; and

5. Such other further relief as may be just and proper.


DATED: September 1, 2020      REED SMITH LLP

By: _____
    Phillip Babich
    Tessa Lessner
    Jessica Vosburgh
    Attorneys for Plaintiff
    Freedom for Immigrants and
    Etowah Visitation Project